## WILLIAM G. CLARK ET AL. *v.* JULIAN M. SEIDEL ET AL.

[No. 252, September Term, 1974.]

*Decided March 12, 1975.*

The cause was argued before POWERS, DAVIDSON and MOORE, JJ.

*James J. Cromwell,* with whom were *Clark & Cromwell* on the brief, for appellants.

*Ivan J. Shefferman,* with whom was *Glenn M. Cooper* on the brief, for appellees.

POWERS, J., delivered the opinion of the Court.

Julian M. Seidel and Saul H. Bernstein, as general partners of Westlake Associates Limited Partnership, filed a bill of complaint in the Circuit Court for Montgomery County to enjoin William G. Clark and James J. Cromwell, trustees, from proceeding with foreclosure of a deed of trust on real estate owned by the partnership.

Sale in the foreclosure proceeding was advertised for 18 April 1974. On 10 April the complaint was filed, and an *ex parte* injunction was entered, to expire on 17 April unless extended. A hearing was held on 16 April 1974 before Judge Ralph G. Shure. The injunction was extended, and on 26 April Judge Shure filed a memorandum opinion, accompanied by a final order enjoining the foreclosure sale. The trustees appealed.

No testimony was taken, but the facts which establish the basis for the legal interpretation on which the case turns are undisputed. We take them from the complaint, the answer, including exhibits to both, and the chancellor's memorandum, which reflects stipulations agreed to by the parties.

On 10 February 1973 Westlake purchased from another limited partnership a parcel of 2.9 acres of land in Montgomery County. As a part of the settlement Westlake gave the sellers a promissory note for $200,000.00, secured by a deed of trust on the property. The note contained the following promise to pay:

"FOR VALUE RECEIVED, the undersigned promise to pay to the order of LAKEVIEW APARTMENTS LIMITED PARTNERSHIP the sum of TWO HUNDRED THOUSAND and 00/100 DOLLARS ($200,000.00), with interest at the rate of seven per centum (7%) per annum; said principal and interest payable interest only, semi-annually, with the first payment to be due and payable six (6) months from the date hereof. Principal curtailments shall be made in three (3) equal

annual and consecutive installments with the first installment commencing on the 10th day of February 1975."

After an acceleration clause which provided for a grace period of 10 days after receipt of written notice to correct any default in the payment or terms of the note or the deed of trust, the note contained this provision:

"IN the event a moratorium, or other governmental action, occurs or exists at or subsequent to the date of this note preventing or in any manner restricting sanitary sewer tap-in and connection to all or any portion of the land described in the Deed of Trust securing this within note, adequate to properly service all improvements contemplated for erection thereon, then and in such event, interest on the note shall accrue during any such period of moratorium or other action; except that all installments of principal required to be paid hereunder shall be extended for the period of such moratorium or other action; except that in no event shall any of the foregoing extensions exceed a period of two (2) years."

The deed of trust accurately recited the terms of the note it secured, including the acceleration clause and the moratorium clause we have set out above. The deed of trust contained a further clause providing for sale upon default. That clause said, in part:

" * * * upon any default or failure being made in the payment of said note or any installment of principal or interest thereon, * * * the trustee * * * shall have the power * * * to sell * * * the said described land and premises at public auction * * * and from the proceeds of said sale * * * to pay whatever may then remain unpaid of said note whether the same shall be due or not, and the interest thereon to date of payment, it being agreed that said note shall, upon such sale being made

before the maturity of said note, be and become immediately due and payable at the election of the holder * * *."

The pleadings, exhibits, and stipulations show that a sewer moratorium did in fact exist when the note was made, and has remained in effect. The facts also permit an inference, which is not rebutted, that the first semi-annual interest payment was made. An advance notice of the second interest payment, due on 10 February 1974, was sent to the makers of the note. When the due date passed and payment was not made, a notice of default was sent. The makers responded, referring to the sewer moratorium, and explained:

" * * * we are taking the position that interest need not be paid at this time but that it shall continue to accrue in accordance with the terms of the promissory note."

More than 10 days after that letter, the noteholders exercised their option to accelerate, and notified Westlake that the entire balance and all accrued interest on the note had become due and payable, and that foreclosure proceedings would be instituted.

The parties thus placed in sharp focus the single question in the case: did the extension of time for making payments called for in the note apply to payments of interest as well as to payments of principal?

Had the parties invoked the jurisdiction of the court to declare their rights under the note and deed of trust, Code, Courts Article, §§ 3-401 to 3-415, they might have avoided risking the consequences of default. The makers of the note chose instead to stand or fall on their own interpretation of their obligation to pay.

We hold that the obligation to make the payments of interest as provided in the note was not extended by the existence of the sewer moratorium, that the note was in default when the makers declined to pay the interest due on 10 February 1974, and failed to correct the default before the

expiration of the 10 day grace period after receipt of written notice, and that the trustees were entitled to foreclose the deed of trust.

No difficulty appears at present about the terms for payment of the principal of the note. The promise was to pay one third of the principal on 10 February 1975, one third one year later, and one third two years later. This promise was qualified by the moratorium clause of the note, which extended the time for payment of the installments of principal for the period of the moratorium, but not to exceed two years. These principal payments were referred to as curtailments, or installments, as is appropriate in describing periodic reductions of an existing debt.

Interest, on the other hand, was required by the promise in the note to be paid semi-annually, with the first payment to be due and payable six months from the date of the note. The part of the moratorium provision which extends the time for payment of installments of principal is the final clause. That clause is separated from the rest of the provision by a semicolon, and is introduced by the word "except". Before it expresses the exception applying to installments of principal, the provision states that "interest on the note shall accrue during any such period of moratorium".

The makers of the note contended below, and the chancellor agreed, that the provision that "interest on the note shall accrue during any such period of moratorium" meant only that interest should continue to be earned. They then enlarged the exception, that installments of principal shall be extended for the period of such moratorium, to mean that not only installments of principal but also payments of interest shall be extended.

We cannot find that meaning in the agreement of the parties. The decision below and the contentions here revolve around the meaning of the word "accrue". We have examined the cited authorities that apply a meaning for the word. We can conclude only that the word "accrue" has no fixed meaning and that what it means in any use depends upon the context and the intent.

Perhaps the best expression is found in *Spaeth v. Hallam*, 300 N. W. 600 (Minn. 1941), in which the Court was considering whether a tax on real estate, allocated between a seller and a buyer, was, as to the buyer, a capital expenditure or a current expense. The Court said, at 601:

> "It is therefore essential to determine when a real estate tax accrues, not only in the sense of being secured by a lien in favor of the state, but also in the sense of becoming a liquidated, fixed, and payable demand.

> \* \* \*

> "The French and Latin origins of the word 'accrue' and its derivatives justify generally the idea that anything accrues when it attaches itself to something else. In that sense 'accrual' is synonymous with 'accretion.' But the word and its derivatives are anything but words of legal art. In general and legal usage they have a variety of meanings. There is hence need in the process of interpretation for resort to context and, in the case of statute or contract, to declared purpose."

Somewhat more at length, the Supreme Court of Georgia said, in *Hartsfield Co. v. Shoaf*, 191 S. E. 693 (Ga. 1937), at 695:

> "The verb 'accrue' is derived from the Latin 'ad' and 'creso,' to grow to; and its several parts, 'accrue,' 'accrued,' and 'accruing,' in their generally accepted sense are used to denote something which is to be added to or attached to something else. 1 C.J.S., Accrue, p. 759; Johnson v. Humboldt Ins. Co., 91 Ill. 92, 95, 33 Am. Rep. 47, 49. 'In the past tense, "accrued" is used in the sense of due and payable; vested.' 1 C.J.S., Accrue, p. 761; Dictionary of Words and Phrases (English) 11. Webster defines the word 'accrue' as (1) 'to increase; to augment, (2) to come to by way of increase; to arise or spring as a growth or result; to be added as an increase,

profit, or damage.' Black defines the word 'accruing' as meaning 'inchoate; in process of maturing; that which may or will ripen into a vested right, an available demand, or an existing cause of action.' The meaning of the word is dependent somewhat on the facts of each case and the *objects to be accomplished* either by the statute or contract in which the word is used."

Less applicable, we believe, but referred to by the chancellor and cited here by appellees, is a construction of the word "accruing", by the Supreme Court of Pennsylvania in *Gross v. Partenheimer*, 28 A. 370 (Pa. 1894). The question involved the payment of interest on a mortgage, which was a lien on property transferred from a buyer to a seller, and involved both interest which was overdue and interest which was currently accruing. The Court said, at 371:

"As generally understood, 'accruing' interest means running or accumulating interest, as distinguished from accrued or matured interest. When we speak of interest which is from day to day accumulating on the principal debt, but which is not yet due and payable, we call it accruing interest. When we refer to interest heretofore payable, but still remaining unpaid, we speak of it as overdue interest, arrears of interest, or interest in arrear, just as we speak of rent in arrear. We are therefore of opinion that the words 'accruing interest' do not refer to, nor in any manner embrace any part of, the six months' interest which was then overdue and unpaid."

In a United State District Court case entitled *In Re Pincus Clothing Co.*, 5 F. Supp. 365 (D.C. Ala. 1933), the District judge considered the effect in a bankruptcy case of a landlord's lien under state law for "unpaid rent accrued and which shall accrue within six months". The Court said, at 367:

" * * * it appears that the meaning of the word 'accrue' is dependent somewhat on the facts of each

case and the objects to be accomplished either by the statute or contract in which the word is used.

\* \* \*

"So when the statute says that where the tenant is adjudged bankrupt the lien shall, as against the trustee, attach only for unpaid rent accrued and which shall accrue within six months from the day of adjudication, then the contemplation of the statute was that it was rent which became due and payable within that time."

We have examined *Ewbank v. United States*, 50 F. 2d 409 (7th Cir. 1931), cited by the chancellor below, but we find no enlightenment there.

The law concerning interest on money owed was clearly stated by the Court of Appeals in *Owens v. Graetzel*, 146 Md. 361, 126 A. 224 (1924). The Court said, at 368:

"The rule is that interest accumulates from day to day but is not payable until the date upon which the principal becomes due and payable, unless there is a different contract between the parties as to the payment of interest."

And the Court further said, at 369:

"The ordinary and usual time of paying interest is at the expiration of definite fixed periods during the continuance of the loan. This usage or custom is based upon the theory that payment of interest is in the nature of a sum of money given as compensation for the use of the principal sum for the definite period specified, and is in this respect analogous to the payment of rent or the hire of personal property. If there is no agreement to the contrary, rent is payable at the expiration of a definite period of occupancy by the tenant; hire for the use of personal property is payable after the property has been so used; and interest for the use of money is payable at the certain specified times

after the borrower has had the use of the principal
for the specific time for which interest is charged."

Neither side contends here that the language of their agreements is ambiguous. Neither offered testimony or evidence below to explain any asserted ambiguity. The chancellor noted this when he said:

"We have here no testimony presented by either side
in any attempt to clear up an alleged ambiguity, if
in fact the language concerning 'interest' was
susceptible of more than one construction * * * ."

The chancellor felt that the "sewer moratorium was of principal concern" to the parties, and felt that it therefore followed that delay in payment was logical, since nothing could be done to make the property income producing until sewer was available. We agree with the reasoning, but not with the extent to which it was applied. It would, we think, be more logical, and more in accord with widely recognized business practice, to defer the obligation to pay the debt, while at the same time requiring payment of interest, or "rent", for the debt foreborne.

If the parties intended that interest merely be "earned", but not become payable, during a moratorium, their words were superfluous. That would have happened in any event. When the parties provided that interest "shall accrue", and provided as an exception that installments of principal shall be extended, they were emphasizing the contrast in the treatment of the two kinds of obligation. We hold that "shall accrue", as applied to interest, meant that interest shall be earned *and paid* as provided in the note, even though payments of principal may be deferred.

The note was in default, the entire obligation was accelerated, the trustees had a right to foreclose, and it was error to enjoin the sale. We shall reverse the order. The trustees will then be free to proceed with foreclosure.

*Order of 26 April 1974 reversed.*
*Appellees to pay costs.*