[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON EXPERT COSTS
In this case, the court decided that an offer of judgment filed by the defendant shortly before evidence began complied with the requirements of § 52-193 of the General Statutes and § 17-11 of the Practice Book. The jury's verdict came in at a figure below the offer and the plaintiff argued the defendant's offer of judgment should be no bar to her claim for cost for two reasons: (1) as said, the offer was filed just before evidence began; and (2) the offer, although served on trial counsel, was not served on another lawyer who had also entered an appearance. These were the two issues explicitly raised by the parties or at least the only two issues directly addressed by the court in its memorandum of decision. As a result of that decision, the court awarded costs to the plaintiff which did not include an award to the plaintiff of a fee paid to a doctor who testified in her behalf at trial and no mention was made concerning these fees in the court's decision.
On August 16, 1999, the plaintiff filed what she styled a Motion for Articulation and claimed the court's "memorandum did not address the issue of expert fees paid by the plaintiff for plaintiffs treating physician, Dr. Cambria, to come to court and testify." The plaintiff then proceeded to present legal argument citing several cases to the effect that she should be awarded these costs despite the fact that the court upheld the validity of the defendant's offer of judgment.
The defendant's response has been to file an objection arguing that the court's decision was clear and requires no further articulation. The defendant goes on to say "the plaintiff should have filed a motion to reargue pursuant to Connecticut Practice Book § 11-12 on or before August 25, 1999. Since no such motion was filed, the Memorandum of Decision dated August 5, CT Page 14221 1999, is now final."
The court does not agree with the defendant's position on this procedural point. No matter what the plaintiff may have called its motion, it can fairly be described as a motion to reargue. The point is that the court in its memorandum of decision specifically reduced the plaintiffs costs to $301.75 and did not in its decision provide costs for the expense of Dr. Cambria testifying which amounted to $2,500. The plaintiff is, in effect, making a request to reargue a position the court has already taken. The central dispute between the parties which led to the court's August 5th decision was the validity of the offer of judgment itself. The court did not address the issue of Dr. Cambria's charges in its memorandum of decision, yet, in effect, decided against including such expenses as part of the plaintiffs bill of costs. The plaintiff is not merely asking the court to articulate the reasons for its decision not to include the Dr. Cambria expenses in her bill of cost. The plaintiff presents argument in its purported Motion to Articulate as to why she believes the court was wrong and concludes by arguing "for all of the foregoing reasons, the plaintiff is entitled to the expert witness fee that she incurred prior to trial (Dr. Cambria's charges, of which more later and the defendant's offer of judgment)." That is a motion to reargue.
Turning to the merits, a very brief reference to the operative facts is necessary. The court believes and has decided the offer of judgment filed on this case was valid and proper both under the statute and the Practice Book Rule. It was filed before evidence began on the day trial began. The case was at least two years old and had been pretried. The court in its previous decision had decided the plaintiff was entitled to costs of approximately $300. The plaintiff now argues that despite the court's ruling and the fact that the jury verdict was less than the defendant's offer she is entitled to be reimbursed for the $2,500 she paid to Dr. Cambria to testify. Dr. Cambria was paid March 16, 1999. The offer of judgment was filed and given to the plaintiff March 17th before evidence began and Dr. Cambria testified after that point in the trial. Section 17-13 of the Practice Book says where the plaintiffs verdict does not exceed the defendant's offer of judgment the plaintiff "shall recover no costs accruing after having received notice of the filing of such offer." The plaintiff argues she is entitled to receive reimbursement for the $2,500 she paid Dr. Cambria to testify. She paid him before she received the defendant's offer of judgment. CT Page 14222 There are no appellate cases on this question and very few trial court decisions. In Magson v. Ferro, 13 Conn. L. Rptr. 515
(1995), the court said, in a situation similar to the one here, that the plaintiff had "accrued" the cost of two experts testifying before trial. The court thought the plaintiffs argument "reasonable" that these "costs accrued before trial when he made arrangements and financial commitments with these two individuals (the experts) to testify at trial." The court noted that plaintiffs counsel was "well-prepared for trial" and had "obviously" made arrangements with these experts to appear at trial prior to receipt of the defendant's offer of judgment. The court awarded the plaintiff the cost of the expert's appearance although the verdict was less than the defendant's offer of judgment. Horbel v. Remele, 22 Conn. L. Rptr. 323 (1998), reaches the same result taking a linguistic view. The court cites §52-195 (b) of the General Statutes which states, "Unless the plaintiff recovers more than the sum named (in defendant's offer of judgment) with interest from its date, he (sic) shall recover no costs accruing after he (sic) received notice of the filing of such offer."
In ordinary usage, one would say that an expense does not "accrue" until the bargained for activity, here, the testifying, takes place. The Horbel court recognizes that but where the verdict came in for less than the defendant's offer still awarded the plaintiff the expert's costs where counsel had made a "firm commitment" to pay costs in a specified amount. The court said, "As used in the law the word accrue has a meaning which differs from the ordinary meaning of the term. The court holds that for the purposes of § 52-195 (b), the word accrue means `becomes a fixed obligation.'" (Citing Black's Law Dictionary.) The court went on to note that the costs here accrued on November 11, when counsel made the required "firm commitment" which was several days before the defendant's offer was filed. The court noted, although the doctor did testify, the charge was not refundable regardless of whether the doctor testified because the doctor had canceled appointments upon agreeing to make himself available on a day certain.
The only other reported case directly on point is McDunnah v.Shea, 10 Conn. L. Rptr. 634 (1994). There, the verdict came in at a figure below the defendant's offer of judgment. The $1,500 cost of an expert was at issue. The defendant argued the witness did not become a taxable cost until he testified and, therefore, the plaintiff was not entitled to any portion of the fee. The court CT Page 14223 noted that the plaintiff had entered into a "binding agreement to pay $1,500 whether or not the expert testified before the offer of judgment was filed. The court said a variety of things: "Certainly part of the fee was to compensate the physician for his review and preparation. Had the defendant made a more timely offer, perhaps the plaintiff could have avoided this cost. At the same time having received the offer of judgment, the plaintiff could have chosen another course thereby avoiding the need for the physician to come to court to testify." Then the court makes an interesting remark seemingly not directly related to the immediately preceding reasoning: "Certainly this court cannot allow parties to enter into agreements with their witnesses and thereby evade the apportionment procedure of § 52-195." The court then awarded $500 to the plaintiff based on customary expert fees.
It is difficult to solve this problem by a purely linguistic analysis. The word accrue, even in the legal arena, is difficult to define. One case interpreting a note containing the word said "that the word `accrue' has no fixed meaning and that what it means in any use depends upon the context and intent." Clark v.Seidel, 333 A.2d 355, 358 (Mryd., 1975). Another court said that: . . . "it appears that the meaning of the word `accrue' is dependent somewhat on the facts of each case and the objects to be accomplished either by the statute or contract in which the word appears." In re Pincus Clothing Co., 5 F. Sup. 365, 367
(D.C. Ala. 1993). But one case citing C.J.S. said that in the past tense "accrued" is used in the sense of due and payable; vested. Hartsfield Co. v. Shoaf, 191 S.E. 693, 695 (Ga. 1937).
The court believes the best approach is to follow the statutory scheme and the policies sought to be achieved by it in the context of what our court has said about taxable costs. In M.DeMatteo Construction Co. v. New London, 236 Conn. 710, 715
(1996), the court said:
 "It is a settled principle of our common law that parties are required to bear their own litigation expenses, except as otherwise provided by statute . . . Furthermore, because costs are the creature of statute . . . unless the statute clearly provides for them, courts cannot tax them."
Fees for parties in civil actions are set forth in §52-257. Witness fees thereunder are defined for medical experts under § 52-260 where in subsection (f), it says: "When any CT Page 14224 practitioner of the healing arts . . . is summoned to give expert testimony in any action or proceeding, the court shall determine a reasonable fee to be paid to the practitioner of the healing arts." In DeMatteo, the court rejected the plaintiffs request that the cost of an appraisal report should be a taxable cost. The court at 236 Conn, page 717, said: "By its express terms § 52-260 (f) treats as taxable only those costs that arise from an expert's testimony at trial." A reasonable reading of the statutory scheme is that since the court taxes costs, the point at which costs "accrue" for an expert in this context would be when he or she testifies at trial, not when litigants make private agreements with their witnesses about their terms of payment.
As said in McDunnah v. Shea, supra, the court cannot allow parties to enter into agreements with their witnesses and thereby evade the apportionment procedure under § 52-195. Or, more to the point perhaps, parties should not be allowed to defeat the purposes sought to be accomplished by the statute. The statute causes parties to seriously access their cases before going to trial in the face of an offer to settle that may be quite reasonable and, in effect, turns out to be so by circumstance where the verdict is below the defendant's offer of judgment. An important incentive for defendants to make such offers in many tort cases is to avoid the expense of having to pay for the opposing side's expert trial testimony. A plaintiff should not be allowed to insulate him or herself from the risk presented by turning down an offer of judgment by paying its experts prior to trial; that is the plaintiffs private decision and should have nothing to do with the taxability of costs and the policy objectives sought to be achieved by § 52-195.
The Magson-Horbel analysis is most attractive in a setting like the one now before the court, the expert is paid a day or so before evidence begins. The defendant's offer of judgment is made after that, on the very eve or morning of trial. That is certainly a sympathetic scenario. But if the Magson-Horbel rule is adopted, it would apply to a situation where a busy doctor demands payment two weeks before trial for canceling appointments or operations, he or she is paid or receives a firm commitment to be paid and the defendant immediately thereafter, say, still two weeks before trial files an offer of judgment. How is it fair in that situation to say to the defendant after the verdict comes in below the offer, you still have to pay Mr. Expert's cost of testifying? And why should the policy objectives of § 52-195
CT Page 14225 be permitted to be evaded in such a case? The court is not particularly satisfied with the result it has reached, but in the absence of more specific Practice Book and statutory guidelines, overall, the best approach is to say costs do not accrue until the expert actually testifies. This is supportable from a linguistic analysis and fits in with the policy objectives of § 52-195. The court does not believe the defendant should have to pay Dr. Cambria's charges in the amount of $2,500.
Corradino, J.